# FOR PUBLICATION



**FILED**
Mar 30 2012, 9:37 am

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**SUZY ST. JOHN**
Marion County Public Defender

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**KARL M. SCHARNBERG**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| CAROLYN BOSS, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No.   49A05-1106-CR-320 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Linda E. Brown, Judge
Cause No.  49F10-0812-CM-276473

**March 30, 2012**

**OPINION – FOR PUBLICATION**

**DARDEN, Judge**

<u>STATEMENT OF THE CASE</u>

Carolyn Boss appeals her convictions and sentence following a bench trial for six counts of class A misdemeanor failure to restrain a dog[1] and six counts of class B misdemeanor harboring a non-immunized dog.[2]

We affirm in part, reverse in part, and remand.

<u>ISSUES</u>

1. Whether there is sufficient evidence to support Boss's convictions.

2. Whether Boss's convictions constitute double jeopardy.

3. Whether Boss's sentence is inappropriate pursuant to Indiana Appellate Rule 7(B).

4. Whether Boss's one-year consecutive sentences are unconstitutional.

<u>FACTS</u>

On November 3, 2008, three dogs surrounded Carole Bales as she walked in an alley near her home. Bales recognized the dogs as those kept by Boss, who lived across the street from Bales.

One of the dogs clamped down on Bales's arm and began shaking her by the arm before pulling her down to the ground. Another dog bit Bales's leg and "started shaking"

---

[1] Ind. Code § 15-20-1-4.

[2] I.C. § 35-46-3-1.

it while the third dog "started nipping [her] up and down [her] body." (Tr. 12). The dogs then "started dragging [Bales] down the alley." (Tr. 12).

Thomas Wimberly responded to Bales's cries for help. When he got to the alley, he saw the dogs "gnawing on" Bales. (Tr. 28). As Wimberly attempted to get the dogs away from Bales, two of the dogs bit his arms and knocked him to the ground. A passer-by alerted Boss to the attack. Boss called the dogs off of Bales and Wimberly and took them back to her yard.

Deborah Dobbins, an animal control officer with Indianapolis Animal Control & Care, responded to the scene. She observed two of the dogs in a fenced area at the side of Boss's house. A forty-two-inch-high chain-link fence surrounded the area. Dobbins, however, observed that the fence was "dilapidated," with gaps at the bottom of the fence under which a dog could crawl. (Tr. 58). The third dog was loosely secured by its collar to a tree in the unfenced backyard. Dobbins observed that the collar was "way too loose for that dog" because it "slipped right off the dog's head . . . ." (Tr. 59). Dobbins observed blood on all three dogs.

Boss informed Dobbins that the dogs belonged to her son and that she was caring for them because he was incarcerated. Dobbins did not find any rabies tags on the dogs, and Boss could not provide any vaccination records. Boss signed a Surrender of Owner's Animal, whereby she certified that she was the owner of the dogs and voluntarily surrendering the dogs to Animal Control & Care.

3

The dog bites caused extensive injuries to Bales, including permanent damage to the nerves in her arm. Bales's injuries required a two-week stay in the hospital followed by extensive physical therapy. Bales also suffered several bite wounds to her legs as well as scratches to her torso. Wimberly's injuries to his arm required a hospital stay of six weeks, followed by several weeks of physical therapy. Wimberly also suffered permanent damage to his arm. In addition, Wimberly suffered several less severe bites to his arms.

On December 8, 2008, the State charged Boss with six counts of class A misdemeanor failure to restrain a dog and six counts of class B misdemeanor harboring a non-immunized dog. The trial court held a bench trial on June 22, 2011, after which it found Boss guilty as charged.

The trial court held a sentencing hearing on June 24, 2011. The trial court found Boss's lack of criminal history and that she voluntarily surrendered the dogs to be mitigating circumstances. The trial court found the nature and circumstances of the crime to be an aggravating circumstance. Finding that the aggravator outweighed the mitigators, the trial court sentenced Boss to concurrent sentences of one year on Counts 1, 2, 3, 5, and 6. The trial court further sentenced Boss to one year on Count 4, to be served consecutive to the sentence on Count 1, to be served in county jail. The trial court then sentenced Boss to concurrent sentences of 180 days on the remaining counts, with 168 days on each count suspended to probation. Thus, Boss received an aggregate sentence of two years, followed by 168 days of probation.

DECISION

1.  Sufficiency of the Evidence

Boss asserts that the evidence is insufficient to support her convictions for failing to restrain her dogs and harboring non-immunized dogs.

> When reviewing the sufficiency of the evidence to support a conviction, appellate courts must consider only the probative evidence and reasonable inferences supporting the verdict. It is the fact-finder's role, not that of appellate courts, to assess witness credibility and weigh the evidence to determine whether it is sufficient to support a conviction. To preserve this structure, when appellate courts are confronted with conflicting evidence, they must consider it most favorably to the trial court's ruling. Appellate courts affirm the conviction unless no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt. It is therefore not necessary that the evidence overcome every reasonable hypothesis of innocence. The evidence is sufficient if an inference may reasonably be drawn from it to support the verdict.

*Drane v. State*, 867 N.E.2d 144, 146-47 (Ind. 2007) (quotations and citations omitted).

a.  *Failure to restrain*

Boss argues that the evidence was insufficient to establish that she failed to take reasonable steps to restrain her dogs. Indiana Code section 15-20-1-4 provides that the owner of a dog commits a class C misdemeanor if:

> (1) the owner recklessly, knowingly, or intentionally fails to take reasonable steps to restrain the dog;
>
> (2) the dog enters property other than the property of the dog's owner; and
>
> (3) as the result of the owner's failure to restrain the dog, the dog bites or attacks another person without provocation, resulting in bodily injury to the other person.

The offense is a class A misdemeanor if it results in serious bodily injury to a person.

> "In interpreting statutes, we do not interpret a statute that is facially clear and unambiguous. Rather, we give the statute its plain and clear meaning." "[I]f a statute is ambiguous, we seek to ascertain and give effect to the legislature's intent." "The best evidence of legislative intent is the language of the statute itself, and all words must be given their plain and ordinary meaning unless otherwise indicated by statute." "[P]enal statutes must be strictly construed against the State, but a statute should not be overly narrowed so as to exclude cases fairly covered by it and should be interpreted so as to give efficient operation to the expressed intent of the legislature." "Also, we assume that the language in a statute was used intentionally and that every word should be given effect and meaning." "We seek to give a statute practical application by construing it in a way favoring public convenience and avoiding absurdity, hardship, and injustice."

*Buchanan v. State*, 956 N.E.2d 124, 128-29 (Ind. Ct. App. 2011) (internal citations omitted).

"Reasonable" is defined as "not extreme or excessive[.]" *See* http://www.merriam-webster.com/dictionary/reasonable (last visited Feb. 23, 2011). In *Plesha v. Edmonds ex rel. Edmonds*, 717 N.E.2d 981, 987 (Ind. Ct. App. 1999), *trans. denied*, this court construed the meaning of "restraint," as used in a city ordinance requiring owners to keep their dogs restrained. Looking at the plain and ordinary meaning, the court determined the terms "restraint" and "restrained" import active control and prevention of conduct rather than mere containment. *See id.* (citing BLACK'S LAW DICTIONARY at 1214 (6th ed. 1991) (confinement or holding back from action); AMERICAN HERITAGE DICTIONARY at 1438 (3d ed. 1992) (to hold back or keep in check; control)). We find the use of the term "restrain" in Indiana Code section 15-20-1-4 to be

analogous to that addressed in *Plesha*. Accordingly, we interpret Indiana Code section 15-20-1-4 as requiring an owner of a dog to take practical and sensible steps to <u>control</u> his or her dog to prevent the dog from going onto the property of another.

Here, the evidence shows that Boss kept two of the dogs in a fenced area. Dobbins, however, testified that the fence had obvious gaps through which the dogs could escape. The evidence further shows that Boss kept the third dog in her unfenced backyard, with only a loose collar through which his head easily slipped. Given the evidence, the trial court could reasonably infer that Boss failed to take reasonable steps to restrain the dogs.

b. *Harboring a non-immunized dog*

Boss further asserts that the evidence was insufficient to establish that she harbored a non-immunized dog. Boss maintains that it was the State's burden to prove that the dogs were not immunized. She also maintains that the State failed to present evidence that she knew the dogs were not immunized.

Indiana Code section 35-46-3-1 provides that a "person who knowingly or intentionally harbors a dog that is over the age of six (6) months and not immunized against rabies commits harboring a non-immunized dog." The offense is a class B misdemeanor "if the dog causes bodily injury by biting a person." I.C. § 35-46-3-1. Indiana Administrative Code section 1-5-2 requires owners to vaccinate their dogs against rabies. Pursuant to Indiana Administrative Code section 1-5-1, upon administering a rabies vaccination, the veterinarian must provide the owner with a

7

completed rabies vaccination certificate and a rabies vaccination identification tag, both of which the owner is required to keep.

In this case, the State presented evidence that Boss could provide neither tags nor certificates of rabies vaccination for the dogs. Thus, the trier-of-fact could reasonably infer that the dogs had not been immunized.

In the alternative, Boss argues that the State failed to prove that she knew the dogs had not been immunized. "A person engages in conduct 'knowingly' if, when he engages in the conduct, he is aware of a high probability that he is doing so." I.C. § 35-41-2-2. "'Because such a finding requires one to resort to inferential reasoning to ascertain the defendant's mental state, the appellate courts must look to all the surrounding circumstances of a case to determine if a guilty verdict is proper.'" *Scruggs v. State*, 883 N.E.2d 189, 191 (Ind. Ct. App. 2008) (quoting *McMichael v. State*, 471 N.E.2d 726, 731 (Ind. Ct. App. 1984), *trans. denied*), *trans. denied*.

Here, the State presented evidence that Boss cared for the dogs[3] and that she did not have proof that they had been vaccinated. Accordingly, the trial court could infer that Boss was aware of a high probability that the dogs had not been immunized.

We find that the State presented sufficient evidence from which the trial court could infer that Boss harbored non-immunized dogs. Boss is asking this Court to reweigh the evidence, which we will not do.

---

[3] Boss admittedly "assumed the role of owner to [the] three dogs . . . ." Boss's Br. at 5.

8

2. Double Jeopardy

Boss next asserts that her convictions violate Indiana's prohibition against double jeopardy. Specifically, she contends that she was subjected to double jeopardy "when her convictions for harboring a non-immunized dog were elevated to a [c]lass B misdemeanor on the same type of bodily injury elevating her convictions for failure to restrain a dog to a [c]lass A misdemeanor." Boss's Br. at 21.

Pursuant to Article 1, Section 14 of the Indiana Constitution, "[n]o person shall be put in jeopardy twice for the same offense."

> [T]wo offenses are the "same offense" in violation of the Indiana Double Jeopardy Clause if, with respect to either the statutory elements of the challenged crimes or the actual evidence used to convict, the essential elements of one challenged offense also establish the essential elements of another challenged offense.

*Lee v. State*, 892 N.E.2d 1231, 1233 (Ind. 2008) (quoting *Richardson v. State*, 717 N.E.2d 32, 49 (Ind. 1999)). "In addition, categories of double jeopardy based on rules of statutory construction and common law prohibit multiple convictions or punishments for the same crime." *Porter v. State*, 935 N.E.2d 1228, 1232 (Ind. Ct. App. 2010). These categories bar "'[c]onviction and punishment for an enhancement of a crime where the enhancement is imposed for the very same behavior or harm as another crime for which the defendant has been convicted and punished.'" *Id.* (quoting *Guyton v. State*, 771 N.E.2d 1141, 1143 (Ind. 2002)). We consider the evidence, charging information, final jury instructions and arguments of counsel in determining what facts the trier-of-fact used

to establish each element of an offense. *Ramon v. State*, 888 N.E.2d 244, 253 (Ind. Ct. App. 2008).

Failure to restrain a dog is a class A misdemeanor when it results in serious bodily injury. "Serious bodily injury" means a bodily injury that, *inter alia*, causes serious permanent disfigurement, extreme pain or "permanent or protracted loss or impairment of the function of a bodily member or organ[.]" I.C. § 35-41-1-25. Knowingly or intentionally harboring a non-immunized dog is a class C infraction. The offense, however, is elevated to a class B misdemeanor if "the dog causes bodily injury by biting a person. I.C. § 35-46-3-1. "'Bodily injury' means any impairment of physical condition, including physical pain." I.C. § 35-41-1-4.

In Counts 1 through 6, the State alleged that Boss committed failure to restrain a dog as a class A misdemeanor based upon "bite wound(s) and[/]or laceration(s) resulting in extreme pain and/or serious permanent disfigurement and/or permanent or protracted loss or impairment of the function of a bodily member or organ" to Wimberly and Bales. (App. 36-41) (emphasis omitted). In Counts 7 through 12, the State alleged that Boss committed harboring a non-immunized dog as a class B misdemeanor based upon "bite wound(s) and/or lacerations" to Wimberly and Bales. (App. 42-44(B)).

The evidence introduced at trial indicates that both Wimberly and Bales suffered permanent injuries to their arms, including nerve damage and loss of function, due to the dog bites. The evidence introduced at trial also indicates that Wimberly and Bales each suffered numerous other bites.

10

Although the State presented evidence of multiple wounds to Wimberly and Bales, it presented no actual evidence to prove bodily injury from Boss's separate conduct of harboring a non-immunized dog. From the evidence presented, we find that Boss has demonstrated a reasonable possibility that the evidentiary facts used by the trier-of-fact to elevate her convictions for harboring non-immunized dogs also were used to enhance her convictions for failure to restrain a dog. *See Richardson v. State*, 717 N.E.2d 32, 54 (Ind. 1999). Therefore, the enhancements for both offenses cannot stand. Accordingly, we remand with directions to vacate Boss's convictions and sentences for harboring a non-immunized dog as class B misdemeanors and enter a determination that Boss committed harboring a non-immunized dog as class C infractions.

3. Inappropriate Sentence

Boss asserts that her sentence is inappropriate. She argues that "it should be revised to a term served on home detention in accord with the prosecutor's original recommendation." Boss's Br. at 8.

We may revise a sentence if it is inappropriate in light of the nature of the offense and the character of the offender. Ind. Appellate Rule 7(B). It is the defendant's burden to "'persuade the appellate court that his or her sentence has met th[e] inappropriateness standard of review.'" *Anglemyer v. State*, 868 N.E.2d 482, 494 (Ind. 2007), *clarified on reh'g*, 875 N.E.2d 218 (Ind. 2007) (quoting *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006)).

In determining whether a sentence is inappropriate, the advisory sentence "is the starting point the Legislature has selected as an appropriate sentence for the crime committed." *Childress*, 848 N.E.2d at 1081. Indiana Code section 35-50-3-2 provides that "[a] person who commits a Class A misdemeanor shall be imprisoned for a fixed term of not more than one (1) year[.]"[4]

> The location where a sentence is to be served is an appropriate focus for application of our review and revise authority. . . . Nonetheless, we note that it will be quite difficult for a defendant to prevail on a claim that the placement of his sentence is inappropriate. This is because the question under Appellate Rule 7(B) is not whether another sentence is <u>more</u> appropriate; rather, the question is whether the sentence imposed is inappropriate. A defendant challenging the placement of a sentence must convince us that the given placement is itself inappropriate. As a practical matter, trial courts know the feasibility of alternative placements in particular counties or communities. For example, a court is aware of the availability, costs, and entrance requirements of community corrections placements in a specific locale.

*King v. State*, 894 N.E.2d 265, 267-68 (Ind. Ct. App. 2008) (internal citations omitted).

As to Boss's character, it appears that her criminal history consists only of a conviction for driving with a suspended license.[5] She also expressed remorse during the sentencing hearing. Moreover, the victims stated that they did not want anything bad to happen to Boss, and the State recommended home detention. While we acknowledge the victims' statements as well as the State's recommendation, and Boss's character

---

[4] We do not address the concurrent sentences imposed on Counts 7 through 12 as we hereby vacate those sentences.

[5] The record does not include a pre-sentence investigation report.

notwithstanding, it is the nature of the offenses that is critical to our review of her sentence.

As to Boss's offense, her failure to adequately restrain three dogs resulted in catastrophic injuries to two people. Furthermore, the testimony presented indicates that this was not the first occasion Boss's dogs ran loose. In light of these factors, we find that Boss's sentence of one year in jail for each count of failure to restrain a dog is appropriate.

4. Consecutive Sentences

Boss further asserts that her two one-year consecutive sentences violate the Fourteenth Amendment to the United States Constitution and Article 1, Section 23 of the Indiana Constitution because "she is not eligible to benefit from the consecutive sentencing limitations of Indiana Code [section] 35-50-1-2." Boss's Br. at 29. She maintains that her total sentence for the six class A misdemeanor convictions should not have exceeded one and one-half years, the advisory sentence for a class D felony. *See* I.C. § 35-50-2-7.

> Indiana Code section 35-50-1-2(c) provides, in pertinent part, as follows:
>
> except for crimes of violence, the total of the consecutive terms of imprisonment . . . to which the defendant is sentenced for <u>felony convictions</u> arising out of an episode of criminal conduct shall not exceed the advisory sentence for a felony which is one (1) class of felony higher than the most serious of the felonies for which the person has been convicted.

(Emphasis added).

13

In *Dunn v. State*, 900 N.E.2d 1291, 1292 (Ind. Ct. App. 2009), this court held that "[t]he clear and unambiguous language of Indiana Code section 35-50-1-2(c) requires the defendant to be sentenced for felony convictions in order to fall within its purview[.]" Finding that Dunn had only misdemeanor convictions and failed to cite "other statutory, constitutional, or common law restrictions on consecutive sentences for misdemeanor offenses," this court affirmed Dunn's sentence.

Again, Boss asserts a constitutional basis for reversing her sentence. We note, however, that this court is not permitted to address a constitutional issue when we can base our decision on any other statutory or common-law basis. *Wright v. State*, 668 N.E.2d 224, 226 n.4 (citing *Bayh v. Sonnenburg,* 573 N.E.2d 398, 402 (Ind.1991), *cert. denied,* 502 U.S. 1094 (1992)).

We recognize that Boss's convictions arose out of a single criminal episode. Nonetheless, Boss's failure to restrain her dogs resulted in serious injuries to two separate victims. Given that a single act resulted in separate harms to separate people, we cannot say that Boss is entitled to a limit on her sentence pursuant to Indiana Code section 35-50-1-2. *See, e.g., Vance v. State*, 860 N.E.2d 617, 620 (Ind. Ct. App. 2007) (finding no error in the imposition of consecutive sentences on the defendant's misdemeanor convictions where a single act resulted in separate harms).

Affirmed in part, reversed in part, and remanded with instructions.

BAKER, J., and BAILEY, J., concur.

14