**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**ELIZABETH A. BELLIN**
Cohen Law Offices
Elkhart, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**BRIAN REITZ**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

ROBERT BRANDON,                              )
                                  )
    Appellant-Defendant,                     )
                                    )
         vs.                                      )     No. 20A05-1202-CR-53
                                    )
STATE OF INDIANA,                            )
                                    )
    Appellee-Plaintiff.                       )

APPEAL FROM THE ELKHART CIRCUIT COURT
The Honorable Terry Shewmaker, Judge
Cause No. 20C01-1103-FA-7

**August 29, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BARNES, Judge**

**Case Summary**

Robert Brandon appeals his convictions and sentence for Class A felony robbery, Class A felony burglary, and Class B felony conspiracy to commit robbery. We affirm in part, reverse in part, and remand.

**Issues**

The issues before us are:

I.     whether Brandon's convictions for both Class A felony robbery and Class A felony burglary violate double jeopardy principles;

II.    whether there is sufficient evidence to support Brandon's conviction for Class A felony robbery; and

III.   whether Brandon's aggregate sixty-year sentence is inappropriate.

**Facts**

The evidence most favorable to the convictions is that on the evening of February 4, 2011, Dawn Alwine was having a birthday party for her daughter, Chelsea, at her home in Elkhart. Earlier in the day, Dawn's acquaintance, disabled sixty-seven-year-old Army veteran Roy Tittle, saw Dawn in a drug store parking lot. Tittle and Dawn had an argument about a man Dawn was dating, and Tittle told Dawn to stay away from his house.

Tittle then returned to his home and began drinking. At about 10:30 p.m., Dawn and Chelsea left the birthday party and walked into Tittle's nearby house without knocking. Another argument ensued. This time, Tittle, who was now intoxicated,

punched Dawn in the mouth. Dawn and Chelsea then left Tittle's house and returned to the party. Tittle resumed drinking and eventually passed out on his recliner.

When Dawn returned to the party with a bloody mouth, she told people that Tittle had punched her and that she wanted someone to hit him in return. Brandon, Alex Jones, and Cameron O'Neal were at the party, and Dawn asked them if they would go to Tittle's house and punch him in the mouth a couple of times, and they all agreed. Dawn also enticed Brandon and the others into going to Tittle's house by telling them that he kept $300 in cash and $100 in change in the house. Brandon also asked Dawn if Tittle had any televisions in the house, and Dawn told him that Tittle did.

At about 2:00 a.m. on February 5, 2011, Dawn, Brandon, Jones, O'Neal, and another individual, Darnell Brown, walked to Tittle's house. Brandon and Jones wore masks that Dawn provided. When they arrived at Tittle's house, Jones kicked the door in and all the individuals went inside. Brandon and Jones both then began punching and stomping on the passed-out Tittle. Jones repeatedly asked Tittle, "where's your wallet, n*****?" Tr. p. 190. Tittle did not respond, but Dawn found his wallet and gave it to Jones. The parties ransacked the house, looking for items to steal. O'Neal found and took a coffee can full of change, Jones took a television, Dawn took some pills, and Brandon took clothes and jewelry. Dawn also believed that Brandon was considering stealing Tittle's car, but she and Jones talked him out of it. Dawn, Brandon, Jones, O'Neal, and Brown returned to the party, with Brandon and Jones excitedly discussing how they had beaten Tittle and acting out their motions. Brandon also exclaimed, "we

3

got that n***** naked." Tr. p. 393. Courtney then drove Brandon and the others to Brandon's residence, where they stashed the items stolen from Tittle's house.

At 2:32 a.m., Elkhart Police Department Corporal Andy Rucker responded to a 911 call placed by a person who lived in Tittle's basement. Corporal Rucker found Tittle sitting in his recliner covered in blood, apparently conscious but unable to remember anything that had happened. Tittle was transported to a hospital emergency room. His left eye was swollen shut, and he had abrasions to his left shoulder and arm, including loose skin hanging off of it. He also told the treating physician that his pain was a ten on a scale from one to ten. A CAT scan revealed that Tittle had a comminuted fracture of his left orbital socket, meaning it was broken into little pieces, and a complex fracture of the lamina papyracea, another part of the eye orbit. Tittle had to have a total of twelve stitches around his left eye. After being in the emergency room for about four hours, Tittle was discharged with a Vicodin prescription.

Eventually, Dawn confessed what had happened to police. For his role in the incident, the State charged Brandon with Class A felony robbery, based on serious bodily injury, Class A felony burglary, based on bodily injury, and Class B felony conspiracy to commit robbery resulting in bodily injury. A jury trial was held on December 5-7, 2011, after which Brandon was found guilty as charged. The trial court entered convictions on all three verdicts and sentenced Brandon as follows: forty-eight years for the robbery and burglary convictions, to run concurrently, and twelve years for the conspiracy conviction,

4

to run consecutive to the other two sentences for an aggregate term of sixty years. Brandon now appeals.

## Analysis

### *I. Double Jeopardy*

We first address Brandon's argument that there is an irreconcilable double jeopardy conflict between his convictions for Class A felony robbery and Class A felony burglary, because they depend upon the same injuries to Tittle. The base offense of robbery is a Class C felony, but it is a Class B felony if it is committed with a deadly weapon or causes bodily injury to anyone other than a defendant and is further elevated to a Class A felony if it results in serious bodily injury to anyone other than a defendant. Ind. Code § 35-42-5-1. The base offense of burglary of a dwelling is a Class B felony, but it is elevated to a Class A felony if it results in either bodily injury or serious bodily injury to anyone other than a defendant. I.C. § 35-43-2-1.

For purposes of the Double Jeopardy Clause of the Indiana Constitution, two offenses are identical and one must be vacated if the evidentiary facts establishing the essential elements of one offense also establish all of the essential elements of a second offense. Spivey v. State, 761 N.E.2d 831, 833 (Ind. 2002). The State correctly notes that the scenario in this case—where the same evidence allegedly supports an enhancement of two different offenses, but not all of the elements of both offenses—does not violate the Indiana Constitution. However, Indiana courts have long adhered to a series of rules of statutory construction and common law holding, among other things, that two different

5

offenses cannot be enhanced based on precisely the same injury or injuries to one victim. Pierce v. State, 761 N.E.2d 826, 830 (Ind. 2002).

The tests for determining whether constitutional or common law rules against double jeopardy have been violated are largely co-extensive. We must "consider the evidence, charging information, final jury instructions and arguments of counsel in determining what facts the trier-of-fact used to establish each element of an offense." Boss v. State, 964 N.E.2d 931, 937 (Ind. Ct. App. 2012). If there is a reasonable possibility that the fact finder relied upon the same evidentiary facts to support an enhancement of two offenses, one of the offenses must be lowered to an offense level that does not depend upon the enhancement. See id. at 938.

Here, the charging information generically alleged only that Tittle sustained serious bodily injury under the robbery count and bodily injury under the burglary count. There also was nothing in the presentation of evidence or jury instructions that would support a distinction between injuries sustained as part of the burglary and those sustained as part of the robbery. The State directs us to the following portions of the prosecutor's closing argument, where it claims a differentiation was made regarding the burglary, the robbery, and the injuries Tittle sustained:

> And once they get inside and they're getting the televisions and the money, Alex and Robert are beating on Roy. . . . Burglary is a crime against property, but we have injury here. . . . They beat on Roy, and Alex is saying where is the money. And Dawn gets the money, and she told you after that they keep beating on Roy. . . . [C]onsider what they were intending to do, to take the money and the television

sets and consider the fact that Roy was experiencing physical pain at this point, and that's bodily inquiry [sic], and that is Count II [burglary].

The final conscious decision made by the five of them that night was to treat Roy's house like a Wal-Mart, a free for all if you will. And the reason you criminalize this separately is because they had the money; they had the opportunity to leave with the televisions; but they stayed in that house. They stayed in that house long enough to start ransacking it and looking for extra stuff, and that's why this is a separate and distinct crime.

\* \* \* \* \*

. . . . And what happens to Roy here? What's the serious bodily inquiry [sic]? . . . It can be extreme pain. It can be unconsciousness. It could be comminuted fracturing, ladies and gentlemen, to Roy's eye socket. . . . What happened to Roy's eye socket? The floor fell out. Comminuted, crushed, pulverized. Bone that has been broken into little pieces. And how about the lamina papyracea, the other bone near the sinus, that's a complex fracture. Just another word, ladies and gentlemen, meaning multiple fractures. This did not have to happen but for Robert Brandon and Alex Jones and the others making the decision to say in that house, to continue to beat Roy, and to take all that extra stuff: the clothing, the gold jewels, and the pills. Three conscious decisions, ladies and gentlemen, three separate crimes. They must be treated separately by you.

Tr. pp. 678-80.

Contrary to the State's contention, we do not see an attempt to differentiate the evidence regarding Tittle's injuries. Clearly, the prosecutor was making an attempt to differentiate generally between the burglary, robbery, and conspiracy charges. Brandon makes no argument that there is a double jeopardy problem with being convicted of all

7

three offenses. Regarding Tittle's injuries, however, the prosecutor's argument does not differentiate at all between the burglary and the robbery.

Indeed, we cannot perceive how the evidence could have supported such a differentiation. After breaking into the house, Jones and Brandon immediately joined together to severely batter Tittle while some of the others looked for property to steal in his house. This battering took place immediately and, as even argued by the prosecutor, it occurred while Jones was asking Tittle where his wallet was. There was no evidence of separate, distinct episodes of beating Tittle. Thus, all of Tittle's injuries were sustained during the course of one continuous beating immediately after the conspirators entered his house and while Jones was demanding property from him. We conclude there is a more than reasonable possibility that the jury relied on the same evidence to support the bodily injury enhancement of the burglary charge and the serious bodily injury enhancement of the robbery charge.

The question is how to remedy this double jeopardy violation. Brandon argues that his robbery conviction should be reduced to a base Class C felony and that his conspiracy conviction based on that conviction should likewise be reduced to a Class C felony. See I.C. § 35-41-5-2(a) (providing that except for murder, a conspiracy conviction is a felony of the same class as the underlying offense). The State argues that this would result in a "windfall" to Brandon and that if we find a double jeopardy violation, we ought to instead reduce the burglary conviction to a Class B felony. Appellee's Br. p. 16.

8

When two convictions contravene double jeopardy principles, we may remedy the violation by reducing either conviction to a less serious form of the same offense if doing so will eliminate the violation. Moala v. State, 969 N.E.2d 1061, 1065 (Ind. Ct. App. 2012) (quoting Richardson v. State, 717 N.E.2d 32, 54 (Ind. 1999)). Generally, in deciding which conviction to reduce or vacate, a reviewing court will reduce or vacate the conviction with the less severe penal consequences. Id. The severity of the penal consequences largely is determined by the class of crime or by the length of sentence imposed. Id. at 1066. Additionally, parties do not have the discretion to choose which conviction should be reduced or vacated in the event of a double jeopardy violation. See id. at 1067 (holding State could not direct that conviction with more severe immediate penal consequences be vacated instead of conviction with less severe consequences).

This case is somewhat unusual, in that both the robbery and burglary convictions have equal penal consequences and Brandon was given equal sentences for each conviction. However, we believe that in this particular case, the burglary conviction clearly has the less severe penal consequences. That is, the robbery conviction carries not only its own penal consequences, but is also related to the Class B felony conspiracy conviction and its twelve-year sentence. As a whole, therefore, the robbery conviction carries more severe penal consequences than the burglary conviction. Additionally, we may remedy this double jeopardy violation by only reducing the burglary conviction to a Class B felony, while if we did not reduce the burglary conviction we would be legally required to reduce Brandon's A felony robbery and B felony conspiracy convictions both

9

to Class C felonies. We believe that in remedying a double jeopardy violation, we should strive to maintain convictions and a resulting sentence that are as close as legally possible to the original convictions and sentence.

We direct that Brandon's conviction for Class A felony burglary be reduced to a Class B felony, which does not require any proof of bodily injury, leaving his robbery and conspiracy convictions intact. Furthermore, in the interest of efficient judicial administration, remand for the trial court to resentence Brandon for the burglary count is not required and we may make this determination ourselves, based on the penalty the trial court found appropriate. See id. at 1066. We believe that a sentence of eighteen years for Class B felony burglary, to be served concurrent with the robbery sentence, is consistent with the sentence originally imposed by the trial court.

## II. Sufficiency of the Evidence

Next, we address Brandon's contention that there is insufficient evidence of serious bodily injury to Tittle to support his Class A felony robbery conviction. When reviewing a claim of insufficient evidence to support a conviction, we neither reweigh the evidence nor judge the credibility of the witnesses, because this is the exclusive province of the fact finder. Lyles v. State, 970 N.E.2d 140, 142 (Ind. 2012). We consider only the evidence most favorable to the State together with all reasonable and logical inferences that may be drawn from that evidence. Id. If a reasonable finder of fact could have found from the evidence that the defendant was guilty beyond a reasonable doubt, we will uphold the conviction. Id.

"Serious bodily injury" is statutorily defined as bodily injury "that creates a substantial risk of death or that causes . . . (1) serious permanent disfigurement; (2) unconsciousness; (3) extreme pain; (4) permanent or protracted loss or impairment of the function of a bodily member or organ; or (5) loss of a fetus." I.C. § 35-31.5-2-292. On rare occasions, an appellate court may determine as a matter of law that certain injuries do not qualify as "serious bodily injury." See Davis v. State, 813 N.E.2d 1176, 1178 (Ind. 2004) (holding that evidence victim suffered lacerated lip, knee abrasion, and broken pinky finger and was not given any prescription-strength pain medication did not establish serious bodily injury). Generally, however, we exercise considerable deference to the fact finder when determining whether a victim suffered serious bodily injury. Mendenhall v. State, 963 N.E.2d 553, 569 (Ind. Ct. App. 2012), trans. denied. "There is no bright line rule differentiating 'bodily injury' from 'serious bodily injury.'" Id.

Here, as a result of Brandon and Jones's stomping and punching, Tittle had severe bruising and abrasions of his left arm, including having some skin hanging loose off of the arm. Tittle also told the treating physician that his pain was a ten on a scale from one to ten, which by itself would seem to be indicative of extreme pain. A CAT scan revealed that Tittle had a comminuted fracture of his left orbital socket, meaning it was broken into little pieces, and a complex fracture of the lamina papyracea, another part of the eye orbit. Tittle had to have a total of twelve stitches around his left eye. After being in the emergency room for about four hours, Tittle was discharged with a Vicodin prescription. We readily conclude a reasonable fact-finder could find this to be enough

11

evidence of serious bodily injury. See Fuller v. State, 875 N.E.2d 326, 333 (Ind. Ct. App. 2007) (holding there was sufficient evidence of serious bodily injury where defendant punched and kicked victim and pushed her down flight of stairs, and victim had comminuted eye socket fracture, multiple severe bruises, complained of "sharp pain," and was given prescription-strength pain medication), trans. denied, abrogated on other ground by statute.

### III. Sentence

Brandon's final argument is that his sixty-year aggregate sentence is inappropriate under Indiana Appellate Rule 7(B) in light of the nature of the offenses and his character.[1] Although Rule 7(B) does not require us to be "extremely" deferential to a trial court's sentencing decision, we still must give due consideration to that decision. Rutherford v. State, 866 N.E.2d 867, 873 (Ind. Ct. App. 2007). We also understand and recognize the unique perspective a trial court brings to its sentencing decisions. Id. "Additionally, a defendant bears the burden of persuading the appellate court that his or her sentence is inappropriate." Id.

The principal role of Rule 7(B) review "should be to attempt to leaven the outliers, and identify some guiding principles for trial courts and those charged with improvement of the sentencing statutes, but not to achieve a perceived 'correct' result in each case." Cardwell v. State, 895 N.E.2d 1219, 1225 (Ind. 2008). We "should focus on the forest— the aggregate sentence—rather than the trees—consecutive or concurrent, number of

---

[1] Our reduction of Brandon's burglary conviction to a Class B felony does not alter his aggregate sentence.

12

counts, or length of the sentence on any individual count." Id. Whether a sentence is inappropriate ultimately turns on the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other factors that come to light in a given case. Id. at 1224.

Brandon argues in part that maximum sentences should be reserved only for the class of offenses and offenders that can be characterized as "the worst." See Payton v. State, 818 N.E.2d 493, 498 (Ind. Ct. App. 2004), trans. denied. However, Brandon's aggregate sixty-year sentence does not approach the maximum sentence he could have received, even with our reduction of the Class A burglary conviction to a Class B felony. With one Class A felony and two Class B felonies, the maximum sentence Brandon could have received if all the sentences were served consecutively was ninety years, or fifty plus twenty plus twenty. See I.C. §§ 35-50-2-4 & 35-50-2-5. Thus, we will not review Brandon's sentence as if it were a maximum one.

Regarding the nature of the offenses, Brandon willingly agreed to Dawn's request to punch Tittle, a disabled Army veteran, in the mouth a couple of times, lured by the prospect of also stealing some money from him. Upon arriving at the house, Brandon, along with Jones, did much more than punch Tittle in the mouth a couple of times.[2] Instead, they viciously beat him after finding him passed out in his recliner. Furthermore,

---

[2] Brandon argues there was conflicting evidence as to whether he actually participated in the beating of Tittle. Dawn in particular could not recall if Brandon participated in the beating or whether Jones did so by himself. The evidence most favorable to the convictions and sentence, however, clearly is that Brandon joined with Jones in stomping and punching Tittle.

13

rather than just stealing Tittle's money as Dawn had originally suggested, Brandon and his cohorts ransacked Tittle's house looking for items to steal. Brandon also had to be talked out of stealing Tittle's car. The nature of the offenses is egregious.

Turning to Brandon's character, as an adult, he has a felony conviction for receiving stolen property and misdemeanor convictions for driving while suspended, criminal mischief, and battery.[3] He also had some juvenile delinquency adjudications, including one for burglary, and admitted to having smoked marijuana regularly since the age of sixteen. He was on probation when he committed these offenses. Brandon was only twenty-one at the time of these offenses and while he had not previously committed any offenses that were as serious as the current ones, the previous offenses were similar in character to the current ones and close in time.

Moreover, regarding Brandon's character, there was evidence that he was excited and bragging about the offenses afterwards, demonstrating a complete lack of remorse. That lack of remorse carried over into Brandon's statement at his sentencing hearing, wherein he apologized to his family but not Tittle. Even if Brandon was maintaining his innocence, he expressed no concern for Tittle's well-being. Instead, he said the prosecutor's job was to "destroy[] people's lives . . . ." Tr. p. 753. He also said, "life is a bitch," and said he would pray for his "persecutors" like Jesus Christ did. Id. at 754. This complete lack of respect and contrition at sentencing, combined with Brandon's

---

[3] Unfortunately, Brandon has not included his pre-sentence investigation report in his appendix, nor did the State file an appendix including it. Brandon's criminal history was partially related at the sentencing hearing.

14

behavior immediately after the crimes were committed, does not reflect well upon his character.

We acknowledge Brandon's argument that his sentence should be closer to that of Jones, who received a forty-eight-year sentence and whose participation in the offenses was at least roughly equivalent to Brandon's. If there is a "'stark'" disparity between two co-defendants' sentences, it may be a factor to consider as to whether the greater of the two sentences is inappropriate. See Coleman v. State, 952 N.E.2d 377, 385-86 (Ind. Ct. App. 2011) (quoting Cardwell, 895 N.E.2d at 1226). We do not believe the twelve-year difference between Brandon's and Jones's sentences is "stark." This is especially true, given that Jones pled guilty and evidently had the Class B felony conspiracy to commit robbery charge against him dismissed as part of the plea bargain.[4] That alone would account for the twelve-year difference between Jones's and Brandon's sentences. Additionally, the fact of Jones's guilty plea would have been a potentially significant mitigating circumstance in considering his sentence. See Cotto v. State, 829 N.E.2d 520, 525 (Ind. 2005). That circumstance is lacking in Brandon's case. In sum, despite Jones's lesser sentence, we find nothing in either the nature of the offenses or Brandon's character that would make his sixty-year sentence inappropriate.

## Conclusion

Under double jeopardy principles, Brandon's convictions for both Class A felony robbery and Class A felony burglary cannot stand. To remedy that violation, we direct

---

[4] Brandon included Jones's chronological case summary in his appendix for our review.

that the burglary conviction be reduced to a Class B felony and that he be sentenced to eighteen years on that count, to be served concurrent with the forty-eight-year sentence for robbery. There is sufficient evidence to support Brandon's conviction for Class A felony robbery, and his aggregate sixty-year sentence is not inappropriate. We affirm in part, reverse in part, and remand for the trial court to amend its records and abstract of judgment in accordance with this opinion.

Affirmed in part, reversed in part, and remanded.

VAIDIK, J., and MATHIAS, J., concur.